STATE OF NORTH CAROLINA v. RONALD EUGENE WILLIAMS

No. 656A82

(Filed 3 May 1983)

**1. Criminal Law § 66.9 — pretrial photographic identification — no unnecessary suggestiveness**

The evidence supported the trial court's ruling that a pretrial photographic identification of defendant by a rape victim was not so unnecessarily suggestive and conducive to irreparable mistaken identity as to constitute a denial of due process, and the trial court properly admitted both the pretrial and in-court identifications of defendant by the victim.

**2. Criminal Law §§ 92.4, 92.5 — consolidation of charges for trial — denial of motion for severance**

The trial court did not abuse its discretion in the consolidation for trial of charges against defendant for kidnapping, first degree burglary and second degree rape on 2 October and charges for second degree burglary and second degree rape on 29 October where the crimes were all committed against the same victim in the same apartment at approximately the same time of night; defendant gained entry to the apartment each time through an open window and committed a single act of intercourse with the victim; on both occasions the defendant effectuated his assault without the use of a weapon and allowed the victim to take contraceptive measures; and defendant told the victim that he had watched her from outside the house on several nights between the two assaults. Nor did the trial court err in the denial of defendant's motion for severance of the charges against him on grounds that presenting so many charges against him at one trial tended to make the jury infer to him a criminal disposition and that the proof of one crime might have been used to convict him of another crime. G.S. 15A-926(a) and G.S. 15A-927(b).

**3. Bills of Discovery § 6; Constitutional Law § 30 — disclosure of witness' statements not required**

The State was not required by G.S. 15A-903 and G.S. 15A-904 to disclose a witness's statements prior to trial, and defendant was not denied his constitutional right of confrontation by the State's failure to disclose the victim's statements where the trial court allowed defense counsel's motion for a recess prior to the cross-examination of the victim so that defense could review the victim's statements, and as a result thereof, defense counsel conducted an extensive cross-examination of the victim.

**4. Burglary and Unlawful Breakings § 5.2 — first degree burglary — time of offense — occupancy of apartment — sufficiency of evidence**

The State's evidence was sufficient to establish that the victim's apartment was entered during the nighttime and while the apartment was occupied where it tended to show that the victim arrived home around 11:30 p.m. and noticed a bedroom window had been opened; a search of her residence by the victim revealed the presence of no one other than herself; and defendant entered her apartment shortly after her arrival.

**5. Kidnapping § 1.2— restraint separate from crime of rape—sufficiency of evidence**

There was sufficient evidence of restraint separate and apart from the restraint inherent in the crime of rape to support conviction of defendant of kidnapping where the evidence tended to show that defendant restrained the victim for a period of several hours in her home before he raped her, and that during such time defendant forced the victim to sit in the living room and to accompany him to the kitchen so that defendant could get something to drink.

**6. Burglary and Unlawful Breakings § 5.2— second degree burglary—time of offense**

The State's evidence was sufficient for the jury to find that defendant entered the victim's apartment after dark so as to support defendant's conviction of second degree burglary where the victim testified that she left her apartment between 6:30 p.m. and 7:30 p.m. on the date in question and thought it was dark at that time, and when she returned home around 11:00 p.m. defendant was present in her bedroom and told her he had entered the apartment about 7:30 p.m.

APPEAL by defendant from the judgments of *Martin, J.,* entered at the 21 June 1982 Criminal Session, Superior Court, ORANGE County. Defendant appeals as a matter of right pursuant to G.S. 7A-27(a). Defendant was charged in separate bills of indictment with kidnapping, two counts of second degree rape, first degree burglary, second degree burglary and larceny. The jury found the defendant guilty of second degree burglary, two counts of second degree rape, first degree burglary and kidnapping. Judge Martin entered judgments against the defendant imposing a life sentence for kidnapping, a life sentence for first degree burglary and a life sentence for the second degree rape which occurred on 3 October 1976. These sentences were ordered to run concurrently. Judge Martin also imposed a life sentence for the second degree rape occurring on 29 October 1976 and a sentence for a term of not less than twenty-five years nor more than life for second degree burglary. These final two judgments were ordered to run concurrently commencing at the expiration of the life sentences previously imposed.

In pertinent part, the State's evidence tended to show that the victim was living alone on Hayes Street in Chapel Hill, N.C. on 2 October 1976. On this date the victim arrived at her residence at approximately 11:30 p.m. at which time she noticed that a bedroom window in her apartment had been opened during her absence. However, she found nothing else unusual upon her

arrival. Soon after entering her apartment the victim heard a crash and went into the living room to investigate. At that time she was grabbed from behind by a man she later identified as the defendant. After a short struggle the assailant forced the victim to remain in the living room with him for approximately one and one-half hours during which time they talked and the defendant attempted to rape the victim. Although a light was on in the living room, the defendant forced the victim to look straight ahead and away from him. The defendant finally was able to complete the rape at which time he covered the victim's face with a towel and left.

The victim called the Rape Crisis Center and was taken to the hospital for a medical examination. She also contacted Lindy Pendergrass of the Chapel Hill Police Department and reported the incident. The victim was interviewed by the Chapel Hill Police and she described her assailant as a man about five feet, ten inches tall, weighing 130 pounds, with a lean appearance, pale skin, dark eyes and dark wavy hair. She was shown numerous photographs but failed to identify her assailant from any of them.

On 28 October 1976, the victim arrived at her residence around 11:00 p.m. A man whom she identified as the defendant was in her bedroom when she arrived and he raped her. Since the first rape on 2 October 1976, all the windows in the apartment had been nailed closed, except for a kitchen window. Apparently it was through the open kitchen window that the defendant was able to gain his entrance to the apartment. While inside the apartment on 28 October 1976, the defendant threatened to steal various items from the victim, he threatened to hit her and he threatened to set fire to the apartment. After the defendant left the apartment, the victim called the police and reported the rape assault.

Dr. Mary Fulghum gave testimony which corroborated the victim's testimony concerning the details of the assault on 28 October 1976. In addition, Dr. Fulghum testified that the results of a medical examination of the victim on 29 October 1976 were consistent with the victim having had sexual intercourse shortly before the examination.

Over the course of several years, beginning in October 1976, the victim was shown photographs by the Chapel Hill Police

Department on at least ten separate occasions. Each time the victim was unable to identify her assailant. Finally, on 4 January 1982, the victim was shown a photographic line-up consisting of seven individuals. From this photographic line-up the victim identified the defendant as her assailant on both 2 October 1976 and 28 October 1976. In addition to the photographic identification, the State presented expert testimony that a fingerprint lifted from a can in the victim's apartment was made by the middle finger on the defendant's right hand.

The defendant did not present any evidence at trial.

At the close of all the evidence, the jury found the defendant guilty of first degree burglary, kidnapping, two counts of second degree rape and second degree burglary. The sentences were ordered as previously indicated.

Other facts pertinent to the defendant's assignments of error will be incorporated into the opinion.

*Rufus L. Edmisten, Attorney General, by Assistant Attorney General W. Dale Talbert for the State.*

*Donald R. Dickerson, for the defendant.*

COPELAND, Justice.

[1] Defendant combined his first two assignments of error and contends that the pre-trial identification of him by the victim was impermissibly suggestive giving rise to a substantial likelihood of an irreparable misidentification. As a result, the defendant argues that both the pre-trial identification and the in-court identification of him by the victim should have been excluded at trial. We do not agree.

The defendant maintains that the pre-trial photographic line-up was unnecessarily suggestive because; (1) he was available for a live line-up; (2) only the defendant's photograph resembled the description of the assailant provided by the victim; (3) the police made comments to the victim suggesting that a photograph of her assailant was in the line-up; and (4) because the circumstances surrounding the victim's observation of her assailant during the course of the crimes made any identification unreliable. Justice Branch (now Chief Justice) in *State v. Henderson,* 285 N.C. 1, 203

S.E. 2d 10 (1974), *death penalty vacated*, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3202 (1976) said that, "(t)he test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." 285 N.C. at 9, 203 S.E. 2d at 16.

The trial court found that the out-of-court identification procedures were not so unnecessarily suggestive and conducive to irreparable mistaken identity as to constitute a denial of due process. We have carefully examined the record, the briefs, the transcript and the pre-trial photographic array viewed by the victim and find that the trial court's ruling is supported by overwhelming competent evidence. We are bound by the trial court's ruling. *State v. Lake,* 305 N.C. 143, 286 S.E. 2d 541 (1982). As a result defendant's assignments of error numbers one and two challenging the admission of the victim's pre-trial and in-court identification is overruled.

[2]  In his third assignment of error the defendant maintains that the trial judge abused his discretion by allowing all the indictments against him to be joined for trial and by failing to allow his motions for severance. The joinder of all the indictments against the defendant was allowed by the trial court pursuant to G.S. 15A-926(a) which provides:

Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies, misdemeanors or both, are based on the same act or transaction or *on a series of acts or transactions* connected together or *constituting parts of a single scheme or plan.* (Emphasis added.)

In reviewing the propriety of the joinder of these charges for trial we must look to see if the trial judge abused his discretion. *State v. Silva,* 304 N.C. 122, 282 S.E. 2d 449 (1981). In the case *sub judice*, the charges were consolidated for trial on the grounds that each crime was a part of a series of transactions constituting a single scheme. In *State v. Silva, supra,* we held that in order for "offenses to be joined, there must be a 'transactional connection' common to all." 304 N.C. at 126, 282 S.E. 2d at 452. See also *State v. Powell,* 297 N.C. 419, 255 S.E. 2d 154 (1979).

The record in this case reveals an obvious "transactional connection" between the October 2 offenses and the October 28 offenses. On both occasions the crimes were committed against the same victim, in the same apartment at approximately the same time of night. The defendant gained entry to the apartment each time through an open window and committed a single act of intercourse with the victim. On both occasions the defendant effectuated his assault without the use of a weapon and he allowed the victim to take contraceptive measures on both occasions. In addition, the victim testified that the defendant told her he had watched her from outside the house on several nights between the two assaults. We, therefore, hold that the trial court properly joined all charges for one trial.

The defendant moved for a severance before and during the trial. G.S. 15A-927(b) provides:

> The court, . . . on motion of the defendant, must grant a severance of offenses whenever:
>
> (1) If before trial, it is found necessary to promote a fair determination of the defendant's guilt or innocence of each offense; or
>
> (2) If during trial, . . . it is found necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. . . .

The defendant contends the trial judge should have allowed his motions for severance because the consolidation of these charges prejudiced him. He argues that presenting so many charges against him at one trial tended to make the jury infer to him a criminal disposition and that the proof of one crime might have been used to convict him of another crime. These contentions are meritless.

The general rule in North Carolina is that proof of another distinct crime is not admissible against a defendant at trial even though it is of the same nature as the crime for which he is being tried. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed. 2d 1137 (1980). "However, such evidence is competent to show 'the *quo animo,* intent, design, guilty knowledge, or scienter. . . .'" *State v. Humphrey,* 283 N.C. 570, 572, 196 S.E. 2d 516, 518 (1973). If the

charges in this case had not been consolidated, the evidence of defendant's presence in the victim's apartment on 2 October 1976 would have been relevant and admissible in a trial on the charges arising from defendant's presence in her apartment on 28 October 1976, and vice versa. Such evidence would be admissible to show intent or design, *State v. Humphrey, supra,* and to show a common plan or scheme. *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972); *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). The defendant has failed to show any prejudice to him as a result of the trial judge's decision to consolidate all charges for trial and to deny his motion for severance. This assignment of error is overruled.

[3] The defendant next contends that we should overrule our holding in *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977) where we held that G.S. 15A-903 and G.S. 15A-904 do not require the State to disclose its witnesses' statements prior to trial. Defendant argues that he was denied his constitutional right to confront those witnesses against him as provided by the Sixth and Fourteenth Amendments to the United States Constitution because without the victim's statement he was unable to "confront" his accuser. The record indicates that the trial court allowed defense counsel's motion for a recess prior to the cross-examination of the victim so that the defense counsel could review the victim's statement. As a result, defense counsel conducted an extensive cross-examination of the victim. We refuse to overrule our decision in *State v. Hardy, supra,* and find that the defendant was provided sufficient opportunity to confront the witness. This assignment of error is overruled.

In his fifth assignment of error the defendant argues that the trial court abused its discretion by admitting testimony by the victim as to when the defendant entered her apartment on 2 October 1976. The basis of this contention is that since the victim stated on cross-examination that she was not sure when the defendant entered her apartment, she should not have been permitted to testify on re-direct examination that she knew, within a few minutes, when he entered the apartment because that testimony was mere speculation and conjecture. We note that the cross-examination of the victim was leading and did not reveal an inability by her to testify to the approximate time of the defendant's entry into her apartment. On re-direct examination the vic-

tim indicated that she knew, within a few minutes, when the defendant entered her apartment. As a result, we do not find that the victim's testimony on re-direct examination was based on speculation and conjecture. We, therefore, overrule this assignment of error.

[4] The defendant next maintains that the trial court erred by denying his motion to dismiss the first degree burglary indictment because the State failed to establish that the apartment was entered during the nighttime while occupied by the victim. In order to withstand a motion to dismiss the State must present substantial evidence of each essential element of the crime charged. However, "(t)he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . ." *State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1979).

The State's evidence tended to show that the victim arrived home on 2 October 1976 around 11:30 p.m. and that she noticed a bedroom window had been opened. She also testified that a search of her residence revealed the presence of no one other than herself but that the defendant entered her apartment shortly after her arrival. We take judicial notice that 11:30 p.m. is after dark in North Carolina. In addition, the victim testified the defendant entered her apartment on 2 October 1976 while she was present. There is substantial evidence both that the entry was effectuated after dark and while the apartment was occupied. This assignment of error is overruled.

[5] The defendant, in his next assignment of error, maintains that the trial court should have dismissed the kidnapping indictment because the acts which form the basis of the kidnapping charge were also a necessary and integral part of the 2 October 1976 rape charge. In *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978) we recognized that a kidnapping charge cannot be sustained if based upon restraint which is an inherent feature of another felony. However, "there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, *provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart*

*from the felony." State v. Fulcher,* 294 at 524, 243 S.E. 2d at 352. (Emphasis added.)

Defendant argues that the time which he restrained the victim was necessary for him to *prepare* for the sex act. The test established in *Fulcher* does not look at the restraint necessary to commit an offense, rather the restraint that is inherent in the actual commission of the offense. The evidence in this case reveals that the defendant restrained the victim for a period of several hours in her home. During that time the defendant forced the victim to sit in the living room and to accompany him to the kitchen so that the defendant could get something to drink. Neither of these restraints is inherent in the crime of rape. As a result, there was substantial evidence of restraint to support the conviction of kidnapping separate and apart from the restraint inherent in the crime of rape. This assignment of error is overruled.

The defendant feebly argues that the trial court should have dismissed all charges against him because the State failed to produce substantial evidence that he was the perpetrator of the crimes. The record indicates that there was overwhelming evidence to support the State's contention that the defendant perpetrated the crimes. This assignment of error is summarily overruled.

[6] In his final assignment of error the defendant argues that the trial court erred by denying his motions for a directed verdict of not guilty and for dismissal of the second degree burglary charge. The basis of this contention is that the State failed to produce substantial evidence that the defendant entered the apartment on 28 October 1976 after dark. This argument lacks merit. The victim testified that she left her apartment between 6:30 p.m. and 7:30 p.m. and she thought it was dark at that time. She further testified that when she returned home around 11:00 p.m. the defendant was present in her bedroom and he told her he had entered the apartment about 7:30 p.m. In viewing the evidence in the light most favorable to the State and allowing every reasonable inference to be drawn from that evidence, *State v. Powell,* 299 N.C. 99, 261 S.E. 2d 114 (1979), we hold that there was substantial evidence to support the State's contention that the

defendant entered the apartment after dark on 28 October 1976. This assignment of error is overruled.

No error.