NO. COA13-1292

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.                                    Buncombe County
                                      No. 11 CRS 57933, 12 CRS 000043
STEVEN RIGIL MCCANLESS


Appeal by defendant from judgments entered 20 May 2013 by Judge Mark E. Powell in Buncombe County Superior Court.  Heard in the Court of Appeals 23 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Amy Kunstling Irene, for the State.*
>
> *Paul Louis Bidwell and Douglas A. Ruley, for defendant.*


ELMORE, Judge.


On 17 May 2013, a jury found Stephen Rigil McCanless (defendant) guilty of attempted sexual offense by an adult with a child and indecent liberties with a child.  Judge Mark E. Powell sentenced defendant to consecutive terms of 157-198 months and 13-16 months active imprisonment.  Defendant appeals. After careful consideration, we find no prejudicial error.

## I. Facts

The State indicted defendant for offenses that allegedly occurred on 3 September 2010 and 1 July 2011. The State alleged that on 3 September 2010, defendant, who was fifty-seven-years-old at the time, "expose[d] his private parts in a public place, the Goodwill Store . . . in the presence of another person, [M.S.,]" and committed indecent liberties with her. The State also charged defendant with the sexual offense of a child occurring on 1 July 2011 by "engag[ing] in a sexual act with [K.C.][,]" first degree kidnapping, and another count of indecent liberties.

Before trial, both parties filed motions with the trial court. The State made a motion to join the September and July offenses for trial pursuant to N.C. Gen. Stat. § 15A-926(a). Defendant filed a motion *in limine* to exclude "almost comic book form" Japanese anime images that depicted sexually suggestive pictures of a young girl. The images were found on a computer that was seized by law enforcement officers from defendant's home during the criminal investigation. Defendant also filed a motion to suppress statements made by him to officers of the Asheville Police Department on 6 July 2011. Defendant told officers that he was at a Salvation Army Store on 1 July 2011, interacted with a young girl, pulled her pants down, touched her

leg and vagina, and "motorboated" (blowing air from a person's mouth on to the skin of another) the girl in her buttock area. He also divulged facts implicating his involvement with M.S. at the Goodwill Store in September 2010 by stating that he may have "flashed" someone. The trial court granted the State's motion to join and denied both defendant's motion *in limine* and motion to suppress.

## II. Analysis

### a.) Admission of Images

Defendant first argues that the trial court committed prejudicial error by admitting evidence of seven anime images taken from defendant's computer. We disagree.

Pursuant to N.C. Gen. Stat. § 15A-1443 (2013):

> [a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

Thus, our standard of review is "whether a reasonable possibility exists that the evidence, if excluded, would have altered the result of the trial." *State v. Anderson*, 177 N.C. App. 54, 62, 627 S.E.2d 501, 505 (2006). Important to our

analysis is our Supreme Court's holding that "the presence of [other] overwhelming evidence of guilt" can render the erroneous admission of evidence harmless. *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988) (citation omitted).

We need not answer the question of whether the trial court erred in admitting this evidence in order to dispose of this issue on appeal. Even assuming *arguendo* that the trial court erred in admitting the images, we conclude that the error was not prejudicial as to defendant's convictions of attempted sexual offense and indecent liberties with a child against K.C. on 1 July 2011.

At trial, the State offered evidence that on 1 July 2011, seven-year-old K.C., K.C.'s mother, and K.C.'s adult sister arrived at the Salvation Army Store. K.C. testified that she walked into the furniture room alone, sat down in a lawn chair, defendant approached her, and he used his finger to touch the inside of her "pee-pee" or "front part[,]" which were words used to describe her vagina. Thereafter, defendant took K.C. behind a grill, and she stated that defendant pulled her pants and underwear down, "put his tongue on my butt and started licking the inside of my butt." K.C.'s version of events remained consistent when she subsequently told her mother, Detective John

Rikard, Nurse Alicia Eifler and Dr. Cindy Brown. Cassie York, a customer at the store, testified that she observed defendant with one knee on the ground as he stood next to K.C. Another customer, Wenona Rogers, testified that she saw K.C. with her pants partially down as defendant had his tongue on K.C.'s butt while "fondling" her. Two store employees, Gary King and Sharon Brown, heard K.C. say that defendant licked her buttock. Furthermore, K.C.'s adult sister testified that she went to locate K.C. and saw defendant "kneeling" in front of K.C. and pulling her pants up.

After K.C.'s sister confronted defendant to ask him what he was doing, he ran out of the store and drove away in a truck. During his interview with police, defendant admitted to patting K.C. on the leg, pulling her pants down, touching her buttock and vagina, and said that "I'm not looking for sex from a child. . . . I'm pretty sure I'm not, but I -- I'd like to find out for sure." This overwhelming evidence of defendant's guilt presented by the State defeats defendant's contention that a reasonable possibility exists that a different result would have been reached at trial had the trial court barred admission of the anime images from the jury. Accordingly, any error, if any, was not prejudicial to defendant.

**b.) Joinder of Offenses**

Defendant also argues that the trial court erred in joining the 3 September 2010 offenses and the 1 July 2011 offenses for trial because "[t]here [w]as [i]nsufficient [t]ransactional [c]onnection [b]etween [t]hese [o]ffenses." We disagree.

"[T]he trial judge's decision to consolidate for trial cases having a transactional connection is within the discretion of the trial court and, absent a showing of abuse of discretion, will not be disturbed on appeal." *State v. Williams*, 355 N.C. 501, 529-30, 565 S.E.2d 609, 626 (2002) (citation and quotation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988); *see also White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) ("A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason . . . [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision."). "[T]he test on review is are the offenses so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial

to the defendant." *State v. Peterson*, 205 N.C. App. 668, 672, 695 S.E.2d 835, 839 (2010) (citation and quotation omitted).

Under N.C. Gen. Stat. § 15A-926 (2013), "[t]wo or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." In ruling on a motion to join, the trial court "must first determine if the statutory requirement of a transactional connection is met." *Williams* at 529, 565 S.E.2d at 626 (citation omitted). The presence or absence of a transactional connection "is a fully reviewable question of law." *Id.* (citation omitted). The trial court "should consider (1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case." *Peterson* at 672, 695 S.E.2d at 839 (citation and quotation omitted). Joinder "is made prior to trial; the nature of the decision and its timing indicate that the correctness of the joinder must be determined as of the time of the trial court's decision and not with the benefit of hindsight." *State v. Silva*, 304 N.C. 122, 127, 282 S.E.2d 449, 453 (1981).

We first note that although the trial court dismissed the charge of indecent liberties with a child against M.S. at the close of the State's evidence and the jury found defendant not guilty of felony indecent exposure against M.S., those facts are irrelevant in analyzing whether the trial court abused its discretion at the time it entered the order for joinder of the offenses. *See id.* at 127, 282 S.E.2d at 452 ("Although the conspiracy charge, the actual link connecting the armed robbery and larceny charges, was dismissed at the close of the evidence, that fact . . . cannot enter into our consideration of whether [the trial judge] abused his discretion in allowing joinder.").

The evidence in the two cases show resemblances in victim, location, motive, and modus operandi. Just like the circumstances surrounding the acts against K.C. on 1 July 2011 as described above, the alleged acts against M.S. on 3 September 2010 were similar. Four-year-old M.S. and her mother were inside a Goodwill store. M.S. and her mother became separated by a clothing rack, and M.S. testified that a man showed her his "bummy." By the time M.S. told her mother what happened, the alleged perpetrator had already left the store. In sum, the State's theory alleged that in each case defendant's victim was a prepubescent young girl, the acts occurred within months of

one another in a donation store while the girl was momentarily alone, defendant immediately fled the store after committing the act, and defendant exerted acts of sexual misconduct. This evidence was sufficient to constitute a transactional connection between the acts such that joinder of the offenses was not an abuse of discretion.

## c.) Motion to Suppress

In his last argument on appeal, defendant contends that the trial court erred in denying his motion to suppress statements made by him to law enforcement officers because they were not voluntary. Again, we disagree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). If a finding of fact is not challenged on appeal, it is "presumed to be supported by competent evidence and is binding on appeal." *State v. Taylor*, 178 N.C. App. 395, 401, 632 S.E.2d 218, 223 (2006) (citation and quotation omitted). "The trial court's conclusions of law . . .

are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

The voluntary nature of a statement is determined by the "totality of the circumstances[.]" *State v. Greene*, 332 N.C. 565, 579, 422 S.E.2d 730, 738 (1992) (citation omitted). We consider the following factors, none of which is determinative: "the defendant's mental capacity; whether the defendant was in custody at the time the confession was made; and the presence of psychological coercion, physical torture, threats, or promises." *Id*. (citation omitted).

We initially note that defendant does not challenge any of the trial court's findings of fact as being unsupported by competent evidence. Instead, he merely states that the findings only addressed "some of the statements made by the detectives" and were "undermined" by other testimony. However, "the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. McArn*, 159 N.C. App. 209, 211, 582 S.E.2d 371, 373 (2003) (citation and quotation omitted). Thus, in the case *sub judice*, the trial court's findings of fact are binding on appeal, and our sole task is to determine whether these findings

support the trial court's legal conclusion that defendant's statements to law enforcement officers were voluntary.

While defendant argues that "[t]he detectives' lies, deceptions, and implantation of fear and hope established a coercive atmosphere[,]" the trial court's findings indicate the contrary:

> 23. Information was given to the Defendant regarding several topics including the Child Medical Examination (CME) performed on the minor child following the incident of July 1, 2011 and the Sexual Assault Kit involving saliva residue and DNA upon the minor child. Rikard wanted the Defendant to believe that DNA testing implicated the Defendant however the detective never lied to the Defendant by stating that the officer had received DNA testing implicating the Defendant with the minor child. Officer Rikard informed the Defendant that the CME was performed on the minor child but did not tell the Defendant that the test results of the CME had not been received by the officers[.]
>
> . . .
>
> 24. Officer Loveland informed the Defendant that there was a video of the incident, without indicating exactly what information the video revealed[.]
>
> . . .
>
> 29. Detective Rikard followed standard interrogation procedure with the Defendant which included sharing some information with the Defendant to elicit a response and withholding other information thereby allowing the Defendant to speak if he wished

to do so on the topic being discussed.

30. The profanity used by Rikard was not continuous, ongoing or in a manner which was used to intimidate the Defendant over an extended period of time. The profanity used by Rikard did not appear to have a significant effect upon the Defendant and his statements to the officers.

. . .

35. The officers did not tell the Defendant the entire contents of the Goodwill Store video nor were they obligated to do so.

Moreover, the trial court found that:

Defendant arriv[ed] at the police department on his own volition, [was] under no compulsion to remain in the interview room, [was] not being restrained in any manner, was not intimidated by a show of force of the officers, display of any type of weapons, promise of reward, leniency or any other inducement. In addition the interview room was open, the Defendant was left alone, departed the police department alone when the interview was completed, and was offered amenities such as drinking water and bathroom facilities. The interview was not excessively long in duration and there is no indication the Defendant was incommunicado from friends or family. . . . There is no evidence that the Defendant was under any physical or mental impairment nor was he under the influence of controlled substances, medications, or alcohol during this interview[.]

These findings are sufficient to conclude that defendant's statements were voluntary. *See State v. Barden*, 356 N.C. 316,

339, 572 S.E.2d 108, 125 (2002) (holding that defendant's statements to police were voluntary where defendant was offered cigarettes and refreshments, had the freedom to use the rest room without being accompanied by an officer, was never restrained or handcuffed during questioning, did not remain in the interview for a prolonged period of time, and did not receive threats or pressure to give a statement). Thus, the trial court did not err in denying defendant's motion to suppress and admitting his statements at trial.

### III. Conclusion

In sum, we expressly decline to address whether or not the trial court actually erred by denying defendant's motion *in limine* to preclude the State from presenting jurors with the anime images found on defendant's computer. Even assuming *arguendo* that the trial court erred, the images did not prejudice defendant due to other overwhelming evidence of his guilt. Furthermore, the trial court did not err in joining the September and July offenses for trial because a transactional connection was present between the acts. Finally, the trial court's denial of defendant's motion to suppress and subsequent admission of defendant's statements was free of error as his statements were voluntary.

No prejudicial error.

Judges McCULLOUGH and DAVIS concur.