STATE OF NORTH CAROLINA v. LONNIE BLIZZARD

No. 28

(Filed 15 December 1971)

1. **Criminal Law § 92— consolidation of crimes occurring on different dates**

   The trial court did not abuse its discretion in permitting the State to consolidate for trial charges against defendant for malicious burning of a dwelling house on one date and secret assault and malicious injury to personal property allegedly occurring on another date where, at the time the consolidation was ordered, the court accepted the State's theory that the defendant may have committed the several offenses in order to terrorize the family of his girl friend.

2. **Criminal Law § 106— sufficiency of circumstantial evidence**

   To warrant a conviction on circumstantial evidence, the facts and circumstances must be sufficient to constitute substantial evidence of every essential element of the crime charged.

3. **Criminal Law § 104— motion for nonsuit — consideration of defendant's evidence**

   On motion for nonsuit, the court may consider defendant's evidence which explains or makes clear the evidence of the State and defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's evidence.

4. **Arson § 4— malicious burning of dwelling house — insufficiency of evidence**

   The State's evidence was insufficient to be submitted to the jury in this prosecution for the malicious burning of a dwelling house where it tended to show only that the fire began on the outside of the house, that there was an odor of gasoline on the ground around the house, that shortly before the fire an automobile similar to the one driven

by defendant was seen parked one and one-quarter miles from the house which was burned, that defendant had bought a gallon jug of gasoline the week preceding the fire, that tracks made by defendant's combat boots were found beside the road about sixty feet from the burned house, and that a gallon jug was found in defendant's car, and defendant offered evidence to explain the presence of his automobile and the tracks made by his combat boots.

5. **Assault and Battery § 14— assault with deadly weapon — shooting into and near occupied house**

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of assault with a deadly weapon where it tended to show that defendant intentionally fired a high powered rifle into and near an occupied dwelling house, frightening the occupants and causing them to seek safety in the back of the house.

Chief Justice BOBBITT concurring in results.

Justice SHARP joins in concurring opinion.

APPEAL by defendant from *Copeland, S.J.* August 31, 1970 Session, LENOIR Superior Court.

The defendant, Lonnie Blizzard, was charged by grand jury indictment with the following criminal offenses: In No. 70 CR 2482 the indictment charged "That Lonnie Blizzard . . . on the 14th day of January 1970 . . . did unlawfully . . . maliciously and feloniously set fire to and burn a dwelling house owned by Julian Lee Jones . . . located on Rural North Carolina Highway No. 1117 . . . said dwelling house at the time was not actually occupied."

In No. 70 CR 2483 the indictment charged that on January 18, 1970, the defendant, Lonnie Blizzard " . . . (D)id, unlawfully . . . maliciously and feloniously in a secret manner assault, beat and wound one, Dorothy Jones (and seven others, naming them) by waylaying and otherwise, with a deadly weapon, to wit: a 30-30 rifle with intent to feloniously kill and murder (the said named persons)."

The record discloses a magistrate's warrant designated as No. 70 CR 2489 which charged that the defendant maliciously injured the personal property of Woodrow Smith by shooting and deflating the tires on two described tractors and one trailer.

On motion of the State in the superior court, the three charges were consolidated for trial. The defendant excepted to the consolidation. At the close of the evidence the court sustained

the motion to dismiss the charge of malicious injury to the tractor and trailer tires. The court also sustained the motion to dismiss the felony charge in Indictment No. 70 CR 2483, but submitted the lesser included offense of assault with a deadly weapon. The jury returned verdicts finding the defendant guilty of malicious burning of the dwelling house as charged in No. 70 CR 2482 and guilty of assault with a deadly weapon, the lesser included offense, charged in No. 70 CR 2483. From the judgments imposing prison sentences, to run concurrently, the defendant appealed. The evidence will be discussed in the opinion.

*Robert Morgan, Attorney General and Myron C. Banks, Assistant Attorney General, by Ronald M. Price, Staff Attorney, for the State.*

*Grady Mercer, Jr., for defendant appellant.*

HIGGINS, Justice.

[1] The defendant's exception to the consolidation of the three cases for trial presents a rather serious question. However, at the time the consolidation was ordered, the court accepted the State's theory that the defendant may have committed the several offenses in order to terrorize the family of his girl friend, Dorothy Jones. However, at the close of the evidence the court dismissed the malicious injury warrant and reduced the assault charge from a felony to a misdemeanor. We are inclined to hold, therefore, that the court did not abuse its discretion in permitting the State to paint its entire picture on a single canvas. G.S. 15-152; *State v. Arsad,* 269 N.C. 184, 152 S.E. 2d 99; *State v. Bryant,* 250 N.C. 113, 108 S.E. 2d 128; *State v. Combs,* 200 N.C. 671, 158 S.E. 252.

On the house burning charge, Julian Jones, a witness for the State, testified that in January, 1970, he lived in a house near Jonestown. " . . . I rented it from Bobby Heath. I did not lease the house; Heath just let me move there. . . . There was an attempt to burn . . . Thursday before it was burned the next Wednesday. It was burned on January 14, 1970." Mr. Jones further testified: "I left home on the 14th and went to my son's house about three miles away. . . . I was away from the house about five minutes. I heard the siren's whistle when I arrived at my son's house. The fire trucks were going towards my house and I went back home. When I got home I discovered

that the house was afire. . . . I do not know what time the siren went off, but I had not been left the house . . . five, six, or seven minutes. . . . I had not noticed anything unusual about my house before I left. . . . It was not over six minutes from the time I left home until I heard the fire whistle."

Chief of Police, Herman B. Dale, testified that he was at a V.F.W. meeting and at 7:05 p.m. the fire alarm sounded. He called the fire station and was advised that the Julian Jones house was burning. "I left immediately and overtook the fire truck at the scene of the fire. Mr. Smith (referring to Woodrow Smith), the owner of the house, went with me. I got there approximately five minutes from the time I started. . . . The center room was burning. Most of the blaze was on the outside. . . . I smelled the odor of some fuel, gasoline, around the burned area outside the house."

The State offered Mr. Lynn Williamson, Deputy Commissioner of Insurance, who testified in substance that he arrived at the scene of the fire between 8:00 and 8:30 p.m. He was permitted to testify that he made an examination and discovered "There was an inflammable odor of some type on the ground under the edge of the house. It had the odor of gasoline." Over objection, he was permitted to express this opinion: "I think it was a man-made fire beginning on the outside of the house."

Mr. Joseph Kornegay testified that during the week preceding the fire the defendant came to his filling station, had his car tank and a gallon vinegar jug filled with gasoline. Mr. Kornegay was shown the jug introduced in evidence which was similar to the jug he filled for the defendant. On cross-examination he testified that he knew the defendant and that he was of good character. "I have sold him gas in a jug several times."

State's witness, Edward Howard, testified that he left home at 7:00 o'clock on the date of the fire. "I saw a 1968 Plymouth parked about one-hundred and twenty-five yards North from my house. . . . I saw somebody walking around behind the car; I do not know if there was an occupant of the vehicle or not. . . . I asked him if I could help him. He said 'no'. I had never seen the person before. He was a white male person."

Mrs. Larry Howard testified that she lived about a mile and a quarter from the Julian Jones house and between 6:00

and 7:00 o'clock on January 14th she saw a 1968 blue and white Plymouth parked on the side of the road about one and one-quarter miles from Julian Jones' house.

On the morning following the fire the officers discovered that along the side of the road about sixty feet from the Julian Jones house were a number of shoe tracks which showed the indenture "X" on the sole of the shoe which made the tracks. The tracks showed a tread design the same as defendant's combat boots.

The State made no effort to disclose the identity of the person who discovered and reported the fire. It would seem to be of importance to know what the conditions were at the time of the discovery, especially whether the fire was on the outside or on the inside of the building.

S.B.I. Agent Warren Campbell testified that on January 24, 1970, he followed automobile tracks on an old road through the woods in Duplin County to a point about one mile from the highway. There he came upon the defendant's Plymouth automobile and a Cadillac. The defendant and Dorothy Jones were sitting together in the Cadillac. The officers arrested the defendant. With his permission they searched his automobile and found in the trunk a pair of combat boots with an "X" mark on the sole, a one gallon plastic jug and a 30-30 Marlin rifle. These articles were seized by the officers and introduced in evidence by the State at the trial.

The defendant testified that at the time of the fire alarm he was in the Deep Run Barber Shop five or six miles from the scene when the fire department's truck answered the call and passed on its way to the fire. He admitted he had been meeting Dorothy Jones frequently at night near her home and had parked his automobile and made tracks around it while he was waiting for her. He admitted that sometimes he wore combat boots. A large number of witnesses testified as to his good character.

Mr. Bernell Kennedy testified as follows:

"I own and operate Bernell's Barber Shop in Deep Run. I saw Lonnie Blizzard in my Barber Shop on January 14. I cut his hair, I don't recall what time it was when he came in. As to if it was before or after the fire whistle blew, it was while the whistle was blowing, the fire alarm

was going off. No sir, I did not notice anything unusual about his dress or the way he looked."

The defendant's explanation of the presence of his automobile and the tracks made by combat boots does not at all contradict the State's evidence, but his version does explain the manner in which they were made.

The evidence of the defendant's purchase of a gallon jug of gasoline earlier in the week does not permit an inference the gasoline from the jug started the fire. The defendant, according to the State's witness, was in the habit of making an occasional purchase of a jug full of gasoline. It is a matter of common knowledge that many persons own lawn mowers and different types of machine tools powered by small gasoline motors. The purchase of a gallon jug full of gasoline, therefore, is neither unlawful nor incriminating. The defendant's evidence does not contradict, but explains and rebuts inferences of guilt on the house burning count.

[2] To warrant a conviction on circumstantial evidence, the facts and circumstances must be sufficient to constitute substantial evidence of every essential element of the crime charged. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. Guilt must be a legitimate inference from facts established by the evidence. When the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt, they are insufficient to make out a case and a motion to dismiss should be allowed.

[3] The applicable rules with citations of authority appear in this Court's opinion in *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169:

"On a motion to nonsuit, the defendant's evidence which explains or makes clear the evidence of the State may be considered. (Citing authorities.)

On a motion for nonsuit, the foregoing rule also permits the consideration of defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's evidence."

This case fits the pattern described by Chief Justice Stacy in *State v. Cranford,* 231 N.C. 211, 56 S.E. 2d 423. "A careful scrutiny of the evidence leaves us with the impression that it falls short of the degree of proof required to convict a defendant in a criminal prosecution."

[4]  The evidence against the defendant on the charge of malicious burning of the dwelling house was insufficient to survive the motion to dismiss.

In Case No. CR 70 2483 the charge is that on January 18, 1970, the defendant feloniously and in a secret manner assaulted Dorothy Jones and seven others (naming them) with a deadly weapon, to wit: a 30-30 rifle with intent to feloniously kill and murder the said named persons.

We note that the bill of indictment did not charge that the defendant intentionally discharged a firearm into an occupied building. Hence the trial judge limited the verdict to assault with a deadly weapon. It may be noted that at the time the indictment was drawn, the Session Laws of 1969 were not readily available. We assume the solicitor was not familiar with Section 7, Article 13, Chapter 869, Session Laws of 1969. The section is now codified as G.S. 14-34.1 and provides:

> "Any person who wilfully or wantonly discharges a firearm into or attempts to discharge a firearm into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a felony punishable as provided in Section 14-2."

On the assault charge the State's evidence disclosed the following: During the early afternoon of January 18, 1970, Dorothy Jones, her mother-in-law Nora Jones, and others, were in the Leonard Jones dwelling house when a number of gun shots were fired from the nearby woods. Mrs. Nora Jones testified the occupants became frightened and sought refuge in a bedroom in the rear of the house. She further testified that she heard bullets "sizzling in the air over the house, I suppose, and around it. . . . I could hear the bullets whiz by. . . . I think Monday we got to looking around and we found a place . . . where a bullet struck. It was near the front door step." However, the officer who made the investigation testified he found no evidence that the house had been hit. The officer did find that one bullet hit a tree in the yard. Four or five others had hit hardwood trees down in the woods. In addition, a number of bullets had gone entirely through pine trees. The officer recovered the bullets which were embedded in the trees. From the bullet channels which looked fresh and bright, without any discoloration, he concluded the bullets had been recently fired.

The recovered bullets and the defendant's 30-30 rifle were sent to the S.B.I. Laboratory in Raleigh where the ballistics expert made tests and expressed the opinion that the bullets introduced in evidence had been fired from the defendant's 30-30 Marlin rifle. At the time the officer removed the rifle from the defendant's automobile the defendant stated that he bought the rifle new and had kept it in his possession since the purchase and no one else had used it. The officer repeated this admission to the jury.

A State's witness (Taylor) testified that on the Sunday "Leonard Jones' house was shot at" he saw a blue and white Plymouth parked by the side of the road about one-half mile from the Leonard Jones house. "I saw somebody there with the boot lid up. . . . He was a white man. . . . I did not know who the defendant was. It was after 12:00, early after that."

Soon after the shooting Deputy Sheriff Harper arrived at the scene and made an investigation. In the woods about three hundred yards from the house he found fresh tracks under a sweet gum tree. He radioed for bloodhounds. They were taken to the tree where they picked up a "hot scent" and trailed for a considerable distance to a wide ditch in an open field where the officers observed boot tracks with marks similar to the combat boot tracks discovered across the road from the Julian Jones house the day after the fire. The officer testified, "At this time it was getting late and the dogs gave out on us . . . . "

[5]  The evidence is sufficient to permit the inference a rifle in the possession and custody of the defendant fired the shots, one of which struck the Leonard Jones house and others struck the garage, the automobile and a tree in the yard. Others struck trees near the sweet gum in the woods. If the shooter intended to injure the occupants of the house, he exhibited exceedingly poor marksmanship. The more probable and charitable view of the occurrence is that the purpose of the shooting was to notify Dorothy that her friend was in the vicinity. At any rate, the intentional firing of a high powered rifle into, or near, the home frightening the inmates causing them to seek safety in the back of the house would be sufficient evidence to make out a case of assault with a deadly weapon.

At the conclusion of the evidence Judge Copeland allowed the motion to dismiss the felony charge, but overruled the motion as to the lesser offense of assault with a deadly weapon. The

court did not commit error, therefore, in allowing the State to go to the jury.

In No. 70 CR 2482 the verdict of guilty is set aside, the judgment is arrested and the defendant is ordered discharged.

In No. 70 CR 2483 we find no error.

Chief Justice Bobbitt concurring in results.

I agree that the evidence offered by the State was insufficient to warrant submission of the malicious burning charge. I disagree with the portion of the opinion which, based on quotations from *State v. Bruton,* 264 N.C. 488, 499, 142 S.E. 2d 169, 176 (1965), holds that *evidence offered by defendant* tending to establish an alibi may be considered in resolving the nonsuit question. I refer specifically to the testimony of defendant and of Kennedy to the effect that defendant was in the Deep Run Barber Shop, five or six miles from the scene of the fire, when the fire whistle blew and the fire truck passed. To consider this type of defense evidence in resolving the nonsuit issue is to nullify the rule that the evidence must be considered in the light most favorable to the State.

The majority opinion stresses this paragraph from the opinion in *Bruton,* at 499, 142 S.E. 2d at 176: "On a motion for nonsuit, the foregoing rule also permits the consideration of defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's evidence. *S. v. Oldham,* 224 N.C. 415, 30 S.E. 2d 318 [1944]."

The following is an excerpt from the opinion in *Oldham:* "The general rule on a demurrer to the evidence is that only the State's evidence is to be considered, and the defendant's evidence is not to be taken into account, unless it tends to explain or make clear *that offered by the State.* [Citations.] However, *in vagrancy cases* where the evidence of guilt is purely negative in character, positive and uncontradicted evidence in explanation which clearly rebuts the inference of guilt and is not inconsistent with the State's evidence should be taken into consideration on motion to nonsuit. [Citations.]" (Our italics.)

In *Oldham,* the evidence offered by the State tended to show the defendant's frequent presence in and around the bus station and the nearby cafe and his association there with vari-

ous persons. The defendant's evidence simply explained why he was at the bus station and nearby cafe and what he was doing on these occasions when observed by the officers. The State's evidence was insufficient to establish guilt. Unexplained, it might have raised a suspicion or inference of guilt. The court simply held that in vagrancy cases the defendant's explanations as to what he was doing on the occasions when observed by the officers was for consideration with reference to dispelling any inference of guilt.

In my view, it was perfectly proper to consider defendant's explanation with reference to the boot tracks, automobile tracks and purchase of gasoline. These are matters referred to in the State's evidence. In my view, defendant's evidence to the effect that he was at a barber shop miles away when the fire broke out is evidence that would be proper for consideration only by a jury in determining the ultimate question of guilt or innocence.

With the exception noted, I concur in the results and in the majority opinion.

Justice SHARP concurs in this opinion.