STATE OF NORTH CAROLINA v. ROBERT BRYAN SEXTON

No. 595PA02

(Filed 13 June 2003)

**Arson— first-degree—malicious burning of an occupied dwelling with an incendiary device—instructions—malice**

The trial court did not commit plain error by instructing the jury that it could find defendant guilty of malicious burning of an occupied dwelling with an incendiary device and first-degree arson of a mobile home if the jury found that defendant acted with implied malice, because: (1) the jury instruction was taken verbatim from the North Carolina pattern jury instructions, 2 N.C.P.I. Crim. 213.20; (2) there is no reason why the definition of malice used in homicide and arson cases should not also apply to the crime of malicious damage to an occupied real property by use of an incendiary device; and (3) there is no requirement that only express malice can be used to prove a violation of N.C.G.S. § 14-49.1.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 153 N.C. App. 641, 571 S.E.2d 41 (2002), finding no error after appeal of judgments entered 28 June 2001 by Judge Richard D. Boner in Superior Court, Gaston County. Heard in the Supreme Court 10 April 2003.

*Roy Cooper, Attorney General, by Kevin L. Anderson, Assistant Attorney General, for the State.*

*Jarvis John Edgerton, IV, for defendant-appellant.*

WAINWRIGHT, Justice.

On 3 July 2000, Robert Bryan Sexton (defendant) was indicted for willful and malicious burning of an occupied mobile home used as the dwelling house of another. *See* N.C.G.S. § 14-58.2 (2001) (first-

degree arson). On 7 August 2000, defendant was indicted for willful and malicious damage to occupied real property by use of an incendiary device pursuant to N.C.G.S. § 14-49.1, and for possession of a weapon of mass death and destruction pursuant to N.C.G.S. § 14-288.8.

Defendant was tried before a jury at the 25 June 2001 session of Superior Court, Gaston County. On 27 June 2001, the jury unanimously found defendant guilty of willful and malicious burning of an occupied mobile home used as the dwelling house of another, willful and malicious damage to real property by use of an incendiary device, and possession of a weapon of mass death and destruction. The trial court sentenced defendant to concurrent prison terms of a minimum of sixty-four and a maximum of eighty-six months' imprisonment on the first two convictions. For defendant's conviction for possessing a weapon of mass death and destruction, the trial court sentenced defendant to a maximum of nineteen and a minimum of twenty-three months' imprisonment but suspended this sentence and placed defendant on sixty months of supervised probation; the trial court also ordered that defendant pay restitution and attorney's fees.

Defendant's convictions and sentences stemmed from the burning of a trailer in a trailer park in Gaston County. The trailer park included five trailers. Joe Neal lived in one trailer. Joe was separated from his wife, Brenda Neal. Brenda lived in the trailer across from Joe. The Neals' three sons, Bobby Neal, Marvin Neal, and Danny Neal, lived with Joe and Brenda in these two trailers. Defendant lived with his girlfriend, Hilda Seeley, in a trailer directly behind Joe's trailer.

On 3 June 2000, defendant and Bobby Neal got into a confrontation when Bobby went to Seeley's trailer. Defendant told Bobby to get off the property and then pushed Bobby. Bobby threw an unopened beer can at defendant. Defendant went into the trailer, grabbed a baseball bat, and chased Bobby with the bat. When Bobby slipped, defendant and Bobby wrestled and fought in the mud. Bobby eventually took the bat away from defendant. Defendant then obtained a larger, metal bat; chased Bobby with this bat; and beat Bobby's truck with the bat. Joe Neal chased defendant off with a hatchet and wooden bat.

Around 7:00 or 8:00 a.m. the next day, defendant chased Bobby again, this time throwing a beer at Bobby. For the rest of the morning, defendant paced behind Joe Neal's trailer. Brenda Neal was cooking breakfast inside Joe's trailer. Brenda heard glass breaking in the

back of the trailer. Brenda went to the back of the trailer and saw smoke and flames coming up from under the back window. She went to the front porch and yelled for her sons. Bobby Neal was in Brenda's trailer at this time. Bobby ran out and saw defendant run from behind Joe's trailer to Seeley's trailer.

Bobby Neal called the police, and defendant fled into the woods. Within ten minutes, Joe's trailer was completely burned and destroyed. Police later found fuel cans at Seeley's trailer. Deputy Fire Marshall Eric Hendrix testified that the fire was started with an incendiary device.

On 28 June 2001, after being convicted and sentenced, defendant filed his notice of appeal in the Court of Appeals. In a unanimous opinion filed 5 November 2002, the Court of Appeals found no error in defendant's trial and sentence. On 19 December 2002, this Court granted defendant's petition for discretionary review as to two issues.

First, defendant argues that the trial court's jury instructions in the present case were improper. Specifically, defendant contends that the trial court erred in instructing the jury that it could find defendant guilty of malicious burning of an occupied dwelling with an incendiary device and first-degree arson of a mobile home if the jury found that defendant acted with implied malice. According to defendant, only express malice, that is "actual ill will, hatred, or animosity," is required for a defendant to be convicted of malicious damage of an occupied dwelling by use of an incendiary device. In short, defendant essentially argues that his convictions cannot be supported by anything other than express malice. Defendant therefore reasons that the trial court's instruction in the present case was error.

The actual jury instruction that was given is as follows:

Malice means not only hatred, ill will, or spite as it is ordinarily understood; again, to be sure, that is malice; but it also means that condition of mind that prompts a person to intentionally inflict damage without just cause, excuse, or justification.

For purposes of clarity, we note that the first portion of the jury instruction above ("[m]alice means not only hatred, ill will, or spite as it is ordinarily understood; again, to be sure, that is malice. . . .") refers to express malice. The second portion of the instruction ("but it also means that condition of mind that prompts a person to intentionally inflict damage without just cause, excuse, or justification") refers to implied malice.

We also note that malice, like intent, is a state of mind and as such is seldom proven with direct evidence. Rather, malice is ordinarily proven by circumstantial evidence from which it may be inferred. *See State v. Richardson*, 328 N.C. 505, 513, 402 S.E.2d 401, 406 (1991); *State v. Childress*, 321 N.C. 226, 229-30, 362 S.E.2d 263, 265-66 (1987).

Defendant made no objection to this jury instruction at trial. Accordingly, to prevail on appeal, defendant must show that the trial court's instruction constituted plain error. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

The jury instruction given in the present case was taken verbatim from the North Carolina pattern jury instructions. 2 N.C.P.I. Crim. 213.20 (1999). The definition of malice in this jury instruction also tracks the definition of malice generally used in arson cases. *See, e.g., State v. Allen*, 322 N.C. 176, 196, 367 S.E.2d 626, 637 (1988). In *Allen*, this Court stated that a burning is willful and malicious under the common law of arson if the burning was done " 'voluntarily and without excuse or justification and without any bona fide claim or right.' " *Id.* (quoting *State v. White*, 291 N.C. 118, 126, 229 S.E.2d 152, 157 (1976)). We further stated in *Allen* that no intent or animus against the property or owner is required. *Id.*

We also note that the malice definition used in the present case is the same definition of malice used in homicide cases. *See, e.g., State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982). We see no reason why the definition of malice used in homicide and arson cases should not also apply to the crime of malicious damage to an occupied real property by use of an incendiary device.

Our interpretation of the applicable definition of malice is further supported by a well-established commentary on criminal law. In their criminal law treatise, Professors Rollin Perkins and Ronald Boyce stated that cases speaking of malice as requiring actual ill will or resentment towards the property owner are "quite illogical" and result from "faulty analysis of the legal meaning of the word 'malice.' " Rollin Perkins & Ronald Boyce, *Criminal Law* 408 (3d ed. 1982). Perkins and Boyce further note:

[T]he element of malice . . . requires either a specific intent to cause the destruction of, or substantial damage to, the property of another, or an act done in wanton and wilful disregard of the plain and strong likelihood of such harm, without any circumstances of justification, excuse or substantial mitigation. Stated

STATE EMPLOYEES ASS'N OF N.C. v. STATE

[357 N.C. 239 (2003)]

in other words: The mens-rea requirement of malicious mischief is a property-endangering state of mind, without justification, excuse or mitigation.

*Id.* at 413.

In support of his argument, defendant relies on a single sentence from this Court's decision in *State v. Conrad*, 275 N.C. 342, 168 S.E.2d 39 (1969). In *Conrad*, this Court stated, "The word 'malicious' as used in [section 14-49.1] connotes a feeling of animosity, hatred or ill will toward the owner, the possessor, or the occupant." *Id.* at 352, 168 S.E.2d at 46. As the State points out in its brief, malice was not an issue in *Conrad*. As such, this statement from *Conrad* is dicta. Moreover, nothing in the statement means that *only* express malice can be used to prove a violation of section 14-49.1.

Accordingly, we conclude that the trial court's instruction was proper.

This assignment of error is overruled.

Defendant also argues that the trial court erred in allowing the State to present evidence of "other crimes" in violation of the North Carolina Rules of Evidence. As to this issue, we conclude that discretionary review was improvidently allowed.

AFFIRMED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.