STATE OF NORTH CAROLINA
v.
MICHAEL WAYNE BURTON

No. COA12-354

Filed 4 December 2012

**1. Arson—sufficiency of evidence—maliciously and willfully set fire**

The trial court did not err in a first-degree arson case by denying defendant's motion to dismiss for insufficient evidence. The State's evidence established more than a suspicion of defendant's guilt, including that defendant maliciously and willfully set fire to the house.

**2. Pretrial proceedings—motion to continue—reasonable opportunity to prepare defense—no prejudice**

The trial court did not err in a first-degree arson case by denying defendant's motion to continue his case because his alibi witnesses failed to appear. Defendant was given a reasonable time and opportunity to prepare his defense. Furthermore, even if it was error for the trial court to deny defendant's motion, defendant was not prejudiced by the error.

**STATE v. BURTON**

[224 N.C. App. 120 (2012)]

## 3. Constitutional Law—effective assistance of counsel

Defendant did not receive ineffective assistance of counsel in a first-degree arson case. Defendant failed to establish that 1) there was a reasonable probability of a different outcome had his attorney made a motion for mistrial; 2) his counsel's preparation of the alibi defense amounted to ineffective assistance of counsel; and 3) he was prejudiced by his counsel's assurance to the jury that he would establish an alibi defense.

Defendant appeals from order entered by Judge Paul G. Gessner on 28 September 2011 in Durham County Superior Court. Heard in the Court of Appeals 12 September 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Kathryn J. Thomas, for the State.*

*James W. Carter for defendant-appellant.*

HUNTER, Robert C., Judge.

Michael Wayne Burton ("defendant") appeals from the trial court's order imposing a sentence of 67 to 90 months imprisonment following a jury verdict finding defendant guilty of first degree arson for setting fire to his former landlord's house. First, defendant argues the trial court erred by denying his motion to dismiss the charge for insufficient evidence. Second, defendant argues the trial court erred by denying his motion to continue when defendant's alibi witnesses failed to appear for trial, because denial of the motion: (1) denied defendant his right to present his defense; and (2) denied defendant of his right to effective assistance of counsel. Third, defendant argues he received ineffective assistance of counsel because his attorney: (1) failed to move for a mistrial after the jury heard inadmissible testimony that defendant threatened to set fire to the house owned by his former landlord; (2) failed to effectively prepare and present his alibi defense; and (3) failed to present alibi evidence he promised to deliver to the jury in his opening statement. After careful review, we find no error.

### Background

Defendant was arrested and indicted for first degree arson for burning the house owned by his former landlord, Mr. Mark Campbell.[1] Defendant gave notice of an alibi defense and provided the names of

1. Defendant was also charged with the violation of a domestic violence protective order, but the charge was voluntarily dismissed by the State for lack of service of the order on defendant.

two alibi witnesses. On 19 September 2011, defendant sought and was granted a continuance for his trial date to allow additional time for defendant to locate his alibi witnesses. The matter came on for a jury trial before Judge Paul Gessner during the 26 September 2011 Criminal Session of the Superior Court of Durham County. Defendant made another motion to continue the trial on the basis that his two alibi witnesses could not be located. The motion was denied.

The State's evidence tended to establish the following facts. In July 2009, Mark Campbell ("Mr. Campbell") purchased a house located on Lancaster Street in Durham, North Carolina through a foreclosure sale. Mr. Campbell had the intent of renovating the house but defendant and Phillip Caldroney ("Mr. Caldroney") were living in the house at the time of the foreclosure. Mr. Caldroney told Mr. Campbell that defendant owned the house before the foreclosure. After acquiring the house, Mr. Campbell offered for defendant and Mr. Caldroney to rent a second house he owned on North Roxboro Street, which they did.

After moving into the second house, defendant failed to make consistent rent payments to Mr. Campbell. Defendant, however, had allowed Julia Jones ("Ms. Jones") to move into Mr. Campbell's house, and defendant collected rent from Ms. Jones. In December 2010, Mr. Campbell learned of this arrangement, confronted defendant, and told him he would have to move out of the house in January. Ms. Jones described defendant as being enraged and combative about having to move and stated that he would throw objects around the house. Ms. Jones testified that defendant blamed her for his eviction and that he believed there was a conspiracy between Ms. Jones and Mr. Caldroney to have him evicted.

In January 2011, Mr. Campbell helped defendant move his belongings out of the house over the course of a few days. While moving defendant's belongings, defendant told Mr. Campbell that he could not believe Mr. Campbell was " 'put[ting] him out[,]' " but he did not seem to blame Mr. Campbell. On 25 January 2011, the day of the fire, defendant had "one little pile" of belongings left in the house, and Mr. Campbell told defendant they could move those belongings the next day. That night, Ms. Jones locked her bedroom door and went to take a shower in the bathroom down the hall. While Ms. Jones was in the shower, Mr. Caldroney smelled something burning and saw smoke coming from Ms. Jones's bedroom. When Ms. Jones unlocked the door to her room, she and Mr. Caldroney saw her mattress and bed-

room wall on fire. Realizing there was nothing they could do to extinguish the fire, Mr. Caldroney called 911, and they left the house.

When the firemen arrived, one of them asked Ms. Jones to move her car away from the house. As she was moving her car, Ms. Jones saw someone in the bushes directly in front of her. She turned on the car's high-beam headlights, saw defendant stand up, look at her, turn away, and leave. Ms. Jones immediately got out of her car, ran back toward the house, and told a fireman that she had seen defendant in the bushes.

The investigation into the fire did not determine its cause, but an officer with the fire department concluded the fire started near Ms. Jones's bed at a point underneath the bedroom window. No accelerants were found.

Two days after the fire, Ms. Jones was interviewed by an investigator with the Durham Police Department, Kristi Roberts ("Investigator Roberts"). Ms. Jones explained to Investigator Roberts that she believed defendant had followed through on a threat he had made to her. When asked at trial to clarify what she meant by that statement, Ms. Jones stated:

> I thought he was going to do bodily harm. I thought that
> once I park at night, he was going to try to attack me
> when I left my car. I thought he would try to do something in the house. It's just——but I——I didn't know,
> but I knew it was going to be something.

Investigator Roberts testified that when she interviewed Mr. Caldroney he stated that defendant had threatened to set the North Roxboro Street house on fire. Defendant objected and moved to strike this testimony. The motion was granted, and the trial court instructed the jury that the testimony could only be used for corroboration of previous testimony.

At the conclusion of the State's evidence, defendant moved for the trial court to dismiss the case for insufficient evidence. The motion was denied. Defendant declined to present any evidence. The jury found defendant guilty of first degree arson, and defendant gave notice of appeal in open court.

## Discussion

### I. Motion to Dismiss

**[1]** Defendant first argues the trial court erred by denying his motion to dismiss the charge for insufficient evidence. We disagree.

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). A motion to dismiss for insufficient evidence is properly denied if there is " 'substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 913, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). All evidence, both competent and incompetent, and any reasonable inferences drawn therefrom, must be considered in the light most favorable to the State. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). Additionally, circumstantial evidence may be sufficient to withstand a motion to dismiss when " 'a reasonable inference of defendant's guilt may be drawn from the circumstances.' " *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (quoting *Barnes*, 334 N.C. at 75, 430 S.E.2d at 919). If so, it is the jury's duty to determine if the defendant is actually guilty. *Id.*

Defendant contends that the State's evidence created no more than a suspicion that he started the fire and was therefore insufficient to survive his motion to dismiss. In support of his argument, defendant cites our Supreme Court's decision in *State v. Blizzard*, 280 N.C. 11, 16, 184 S.E.2d 851, 854 (1971). The defendant in *Blizzard* was charged with the malicious burning of a dwelling house, and the State's evidence established the following circumstantial evidence: before the fire, a car similar to the defendant's was seen parked on the road approximately one and one-quarter miles from the scene of the fire, *id.* at 15, 184 S.E.2d at 853; a police officer reported that a smell of gasoline was noticeable during the fire, *id.* at 14, 184 S.E.2d at 853; after the fire, the defendant's footprints were found approximately 60 feet from the house, *id.* at 15, 184 S.E.2d at 853; and, ten days after the fire, a search of the defendant's car led to the discovery of a plastic gasoline jug, *id.* at 15, 184 S.E.2d at 854. In response,

the defendant offered evidence to explain the presence of his car and footprints. *Id.* Additionally, the State's witnesses established that the defendant regularly bought a jug of gasoline, but that many people did so for its use in yard equipment. *Id.* at 16, 184 S.E.2d at 854. The *Blizzard* Court concluded that while the defendant's evidence did not contradict the State's evidence, it provided an explanation for the presence of his car, his footprints, and the gasoline jug, and thus rebutted the inference of his guilt. *Id.* The Court held that the State's evidence raised merely a suspicion of guilt and could not survive his motion to dismiss. *Id.* at 16-17, 184 S.E.2d at 854-55.

Here, we conclude the State's evidence did not merely establish a suspicion of defendant's guilt but established a reasonable inference of guilt sufficient to survive his motion to dismiss. *See Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455. Defendant points to minor inconsistencies in Ms. Jones's testimony wherein she described seeing defendant in the bushes near the house during the fire and that he left upon being noticed by her. Ms. Jones testified that she saw defendant "laying down" but upon being noticed he stood up and left the scene. Yet, in her statement given to the police three days after the fire, Ms. Jones described defendant as being in the bushes but "stooped down and tangled up in something" before "running" from the scene upon being noticed by her. Defendant argues that evidence that he walked with a limp, a walking stick, and wore an orthopedic boot rendered Ms. Jones's testimony not credible. The record however contains testimony from multiple witnesses that, despite his limp, defendant was frequently seen walking in the neighborhood, "moving at a pretty good pace," and that he was seen "shooting baskets" at the basketball goal behind Mr. Campbell's house on several occasions. Moreover, upon a defendant's motion to dismiss the trial court does not resolve issues of witness credibility, but is only concerned with the sufficiency of the evidence. *State v. Ellis*, 168 N.C. App. 651, 657, 608 S.E.2d 803, 807 (2005). The State's evidence established more than a suspicion of defendant's guilt, and his reliance on *Blizzard* is misplaced.

Defendant further argues there was no evidence the fire was willfully and maliciously started. "Arson is the willful and malicious burning of the dwelling house of another person." *State v. Allen*, 322 N.C. 176, 196, 367 S.E.2d 626, 637 (1988). A showing of express malice is not required in arson cases. *State v. Bruton*, 165 N.C. App. 801, 806-07, 600 S.E.2d 49, 53 (2004). Malice " 'is a state of mind and as such is seldom proven with direct evidence. Rather, malice is ordinarily proven by circumstantial evidence from which it may be

inferred.' " *Id.* (quoting *State v. Sexton,* 357 N.C. 235, 238, 581 S.E.2d 57, 58 (2003)).

The record reveals substantial evidence that defendant blamed Ms. Jones and Mr. Caldroney for his eviction from Mr. Campbell's house, that he was "enraged" for being evicted, and that he had threatened to harm Ms. Jones. The fire started in Ms. Jones's bedroom and occurred hours after defendant moved all but a small amount of his belongings out of the house. Additionally, defendant was seen outside of the house, lying down or crouching in the bushes during the fire, and fleeing the scene upon being noticed by Ms. Jones. Viewing the evidence in the light most favorable to the State, the evidence was sufficient to allow a jury to conclude that defendant maliciously and willfully set fire to the house. "In 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury . . . ." *State v. Curmon,* 171 N.C. App. 697, 703, 615 S.E.2d 417, 422 (2005) (holding the trial court did not err in denying the defendant's motion to dismiss a charge of arson in light of the State's circumstantial evidence of defendant's guilt) (citation omitted). The trial court did not err in denying defendant's motion to dismiss, and defendant's argument is overruled.

## II. Motion to Continue

[2] Next, defendant argues that because his alibi witnesses failed to appear the trial court erred by denying his motion to continue in that denial of the motion: (1) denied defendant his right to present his defense; and (2) denied defendant his right to effective assistance of counsel. We disagree.

If a motion to continue is based on a constitutional right, the denial of the motion is reviewed *de novo* rather than for abuse of discretion. *State v. Thomas,* 294 N.C. 105, 111, 240 S.E.2d 426, 431 (1978). " 'Due process requires that every defendant be allowed *a reasonable time and opportunity* to investigate and produce competent evidence, if he can, in defense of the crime with which he stands charged and to confront his accusers with other testimony.' " *Id.* at 113, 240 S.E.2d at 433 (addressing the defendant's argument that the denial of a motion to continue infringed upon his constitutional right to present his defense) (quoting *State v. Baldwin,* 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970) (emphasis added)). For the reviewing court to grant a defendant a new trial based on the trial court's denial of a motion to continue, the defendant must establish that denial of the motion was error and that he was prejudiced by the error. *Id.* at 111, 240 S.E.2d at 431-32.

Here, in support of his motion to continue, defendant's counsel argued that the alibi witnesses had moved out of the state after being served subpoenas, but he believed one witness had returned to the area. Despite his efforts to contact the witness he believed had returned to the area, defendant's counsel was unable to do so, and he sought a continuation to allow more time to find the witness. In denying the motion, the trial court noted that both alibi witnesses were served months prior to trial and that the trial had already been continued for one week so that defendant could locate the alibi witnesses. On these facts, we conclude that defendant was given a "reasonable time and opportunity[,]" *id.*, to prepare his defense, and that the trial court did not err in denying his motion. Even if it was error for the trial court to deny defendant's motion, we conclude defendant was not prejudiced by the error. Defendant's cross-examination of Investigator Roberts established that one of the two purported alibi witnesses told the investigator that defendant was at the witness's residence at the time of the fire. Additionally, the trial court instructed the jurors that they were to consider defendant's alibi evidence in their deliberations. Defendant's argument is overruled.

### III. Ineffective Assistance of Counsel

[3] Defendant argues he received ineffective assistance of counsel because his attorney: (1) failed to move for a mistrial after the jury heard inadmissible testimony that defendant threatened to set fire to the house; (2) failed to effectively prepare and present his alibi defense; and (3) failed to present alibi evidence that he promised the jury he would produce.

Under the two-prong test for ineffective assistance of counsel adopted by our Supreme Court, "the defendant must first show that counsel's performance fell below an objective standard of reasonableness as defined by professional norms." *State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984)). Thus, defendant must show his attorney "made 'errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Id.* (quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693). After satisfying this first prong, a defendant "must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error." *Id.*

Here, defendant's counsel did not move for a mistrial upon Investigator Roberts's testimony that defendant threated to set fire to

Mr. Campbell's house. His counsel, however, objected and moved to strike the testimony. The trial court granted the motion and gave a limiting instruction. While "it cannot be presumed that a limiting instruction is automatically sufficient to negate highly inflammatory evidence[,]" *State v. Brown*, ___ N.C. App. ___, ___, 710 S.E.2d 265, 281 (2011), *aff'd per curium*, ___ N.C. ___, 722 S.E.2d 508 (2012), in light of the other evidence of defendant's guilt, we conclude that this testimony did not result in "substantial and irreparable prejudice" to defendant as required for a mistrial by N.C. Gen. Stat. § 15A-1061 (2011). Defendant has failed to establish that there was a reasonable probability of a different outcome had his attorney made a motion for mistrial, and counsel need not make a motion for which there is not a reasonable probability that it would be granted. Defendant's argument is overruled.

Defendant also argues that his counsel failed to adequately prepare his alibi defense. The record reveals, however, that defendant's counsel subpoenaed the two alibi witnesses, actively pursued contact with the witnesses, and procured a continuance for defendant's trial. Additionally, as noted above, defendant's counsel introduced evidence of defendant's alibi through the cross-examination of Investigator Roberts. Thus, defendant has not established that his counsel's preparation of the alibi defense amounted to ineffective assistance of counsel.

Lastly, defendant argues that his attorney erred by promising the alibi defense in his opening statement and then failing to provide the evidence. As our Supreme Court stated in *State v. Moorman*, 320 N.C. 387, 392, 358 S.E.2d 502, 506 (1987), counsel should "avoid promising to prove matters in opening statements, without a reasonable belief that evidence exists which supports the promises[.]" While the opening arguments are not recorded in the transcript, defendant's counsel introduced evidence of defendant's alibi, and the trial court instructed the jury to consider defendant's alibi evidence in its deliberations. Thus, defendant was able to provide evidence of his alibi, and he has failed to show that he was prejudiced by his counsel's assurance to the jury that he would establish an alibi defense.

## Conclusion

For the reasons stated above, we find no error.

NO ERROR.

Judges BRYANT and STEELMAN concur.